## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| RACHEL HOLMES, Individually and on Behalf of All Others Similarly Situated, ) )  ) )  ) )  ) )  ) )  ) )  ) )  ) )  ) )  ) ) | Case No.: 17-cv-1752 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| vs. | |
| | **Jury Trial Demanded** |
| MIDLAND CREDIT MANAGEMENT INC., MIDLAND FUNDING LLC, ALLIED INTERSTATE LLC, and ATLANTIC CREDIT & FINANCE INC., | |
| Defendants. | |

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

### PARTIES

3.      Plaintiff Rachel Holmes is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, specifically, personal credit card accounts.

5.    Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

6.    MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.    MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. MCM is a debt collector as defined in 15 U.S.C. § 1692a.

8.    Defendant Midland Funding LLC, ("Midland Funding") is a Delaware corporation with its principal place of business located in California. The Wisconsin Department of Financial Institutions lists Midland Funding's address as 3111 Camino Del Rio North, San Diego, CA 92108. Midland Funding's actual address may be MCM's address.

9.    Midland Funding is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family or household purposes.

10.    The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

11.    The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S.

Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

12.     The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts.

13.     Midland Funding's website contains an "FAQ" webpage, which states:

### Who is Midland Funding?

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

14.     Together, MCM and Midland Funding are part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for MCM and Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

15.     According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the

dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

16.     Midland Funding's role, generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts.

17.     Midland Funding by itself and through its attorneys, also files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed 604 small claims lawsuits against Wisconsin consumers in the month of November 2017 alone. When Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

18.     Midland Funding is a debt collector as defined in 15 U.S.C. § 1692a. *Barbato*, 2017 U.S. Dist. LEXIS 172984; *Tepper v. Amos Fin., LLC*, 2017 U.S. Dist. LEXIS 127697 *20-22.

19.     Defendant Allied Interstate, LLC ("Allied") is a corporation with its principal offices located at 12755 Hwy. 55, Suite 300, Plymouth, Minnesota 55441.

20.     Allied is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

4

21.     Allied is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Allied is a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a.

22.     Defendant Atlantic Credit & Finance, Inc. ("Atlantic") is a corporation with its principal offices located at 3353 Orange Avenue, Roanoke, VA 24012.

23.     Atlantic's website states that Atlantic is a "Subsidiary of Encore Capital Group, Inc." http://www.atlanticcreditfinance.com/about_us.html.

24.     Atlantic is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

25.     Atlantic is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Atlantic is a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a.

**FACTS**

*Facts Relating to Plaintiff Holmes*

*December 20, 2016 Letter from Allied*

26.     Prior to December 20, 2016, Holmes opened a "Walmart Mastercard" account with Synchrony.

27.     On or about December 20, 2016, Allied mailed Holmes a debt collection letter regarding an alleged debt, allegedly owed by Holmes to Synchrony for her Walmart Mastercard with an account number ending in 1829.  A copy of this letter is attached to this Complaint as Exhibit A.

28.     Exhibit A contains the following:

5

Re:     Walmart® Mastercard®
            Creditor: Synchrony Bank   Account No. ************1829
            Amount Owed: $1,993.00
            Reference No.: ████████7305

Rachel Holmes:

We are a debt collection company and Synchrony Bank has contracted with us to collect the debt noted above. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Exhibit A.

29.     Exhibit A states that, as of December 20, 2016, Holmes' account had a balance of $1,993.00.

30.     Exhibit A further states that Synchrony had contracted with Allied to collect on Holmes' Walmart Mastercard account.

31.     Exhibit A also contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors mail to consumers along with, or within five days of, the initial communication:

Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

32.     Exhibit A states that the debtor has 30 days from the date of receipt of the letter to request validation of the debt.

### *January 31, 2017 Letter from Synchrony*

33.     On or about January 31, 2017, Holmes received a letter, ostensibly from Synchrony, informing her that her account was sold to MCM. A copy of this letter is attached to this complaint as Exhibit B.

34.     Exhibit B contains the following:

6

RE: Walmart MC
Account Number: ████████ 829
Account Balance at Time of Sale: $1993.98

Exhibit B.

35.     Exhibit B also contains the following:

This letter is to inform you that the above-referenced account was sold to Midland Credit Management, Inc. on 01/19/2017. If you have any questions about this account, please contact:

Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578
855-977-1969

Exhibit B.

36.     Exhibit B states that Holmes' Walmart Mastercard account was sold to MCM on January 19, 2017 and had a balance of $1,993.98 at the time of sale.

37.     The unsophisticated consumer understands that consumer accounts may be implicated in "sham sales" and that financial account information may be subject to "data breaches." *Pettit v. Retrival Masters Credit Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (the unsophisticated consumer may be trusting and naïve but still "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences."); *see Ferkingstad v. Accounts Receivable Servs., LLC*, 2017 U.S. Dist. LEXIS 57405, at *8-9 (D. Minn. Apr. 13, 2017) (plaintiff stated claim that "ARS fabricated the Bill of Sale and Exhibit 1A to support its false representation that a sale and assignment took place."); *In re Experian Data Breach Litig.*, 2016 U.S. Dist. LEXIS 184500, at *1 (C.D. Calif. Dec. 29, 2016) (discussing data breach).

7

***38.*** The unsophisticated consumer would be confused as to whether Exhibit B was legitimate, in light of the fact that she had received Exhibit A just a few weeks before Exhibit B, Exhibit A stated that she had thirty days to request verification of the debt, and the amount of the debt stated in Exhibit A was different than the amount of the debt stated in Exhibit B.

### February 24, 2017 Letter from Atlantic

39. On or about February 24, 2017, Atlantic mailed Holmes a debt collection letter regarding an alleged debt, allegedly owed to "MIDLAND FUNDING, LLC ("MID")" ("Midland Funding") and allegedly originally owed to "SYNCHRONY BANK WALMART." A copy of this letter is attached to this Complaint as Exhibit C.

40. Exhibit C contains the following:

```
Original Creditor  ▸ SYNCHRONY BANK
                     WALMART
Current Creditor  ▸ MIDLAND FUNDING, LLC ("MID")
         Acct #  ▸ ***********1829
     ACF Acct #  ▸ ███5347
        Balance  ▸ $1,993.98
```

Exhibit C.

41. Exhibit C also contains the following:

Please allow this letter to serve as an introduction to MID. MID has purchased or was otherwise assigned the account (the "Account") referenced above and it has been placed with Atlantic Credit & Finance, Inc. ("Atlantic") for collection.

Our records reflect you are obligated on the Account which is in default. Accordingly, Atlantic is entitled to be paid the balance due of $1,993.98. All payments on the account should be sent as noted below.

Exhibit C.

42. Exhibit C also contains a payment remittance slip, which includes the following:

8

▲ Detach Here ▲     **DETACH HERE AND ENCLOSE THIS PORTION ALONG WITH PAYMENT**     ▲ Detach Here ▲
Make check or money order payable to Atlantic Credit & Finance, Inc.

RACHEL HOLMES
8666 S CHICAGO RD
APT 16
OAK CREEK, WI 53154-3592
February 24, 2017

| | | |
|---|---|---|
| Original Creditor ▶ | SYNCHRONY BANK |
| Acct # ▶ | ************1829 |
| ACF Acct # ▶ | ████5347 |
| Balance ▶ | $1,993.98 |
| Amount Enclosed ▶ | |

Exhibit C.

     43.    Exhibit C also contains a "PRIVACY NOTICE," which includes the following:

**OBTAINING INFORMATION:**

- We obtain Customer Information as permitted by law from: a customer's account file at the time we purchase his or her account; applications or questionnaires; and a customer's transactions and experience with us or our affiliates.

- This information may include a customer's name, address, social security number, former employers, payment history and account balances.

Exhibit C.

     44.    On its face, Exhibit C is confusing and misleading as to the identity of the creditor.

     45.    Exhibit C states that "MIDLAND FUNDING, LLC ('MID')" is the current creditor and that "MID has purchased or was otherwise assigned the account . . . and it has been placed with Atlantic Credit & Finance ("Atlantic") for collection," which suggests the creditor is Midland Funding.

     46.    However, Exhibit C also suggests that that the creditor is Atlantic or that the debt has not been sold at all.

     47.    The header in Exhibit C states an "Acct #," which is the last four digits of Holmes' original Walmart Mastercard account number, and an "ACF Acct #" which is, presumably a new account number that was assigned by Atlantic. It does not state a "current creditor" or Midland Funding account number.

9

48.    Exhibit C states that "Atlantic is entitled to be paid the balance due of $1,993.98."

49.    Exhibit C instructs the alleged debtor to "make check or money order payable to Atlantic."

50.    Like the header, the payment remittance slip in Exhibit C again states an "Acct #" and an "ACF Acct #" without providing a Midland Funding account number.  Also like the header, the payment remittance slip does not state a "current creditor" or Midland Funding account number.

51.    Exhibit C states that Atlantic "obtain[s] Customer Information as permitted by law from: a customer's account file at the time we purchase his or her account."

52.    The unsophisticated consumer, considering Exhibit C on its face, would be confused as to how many times, if any, the account had actually been sold and who actually owned the debt as of the date of Exhibit C.

53.    Moreover, this confusion is exacerbated by the confusing account history associated with Holmes' account, especially in light of Exhibit B, which states that the account was sold to MCM, rather than Midland Funding or Atlantic.

54.    Atlantic is a corporate affiliate of both MCM and Midland Funding. It should know the identity of the party who actually owns the debt.

55.    The unsophisticated consumer, having received Exhibits A, B, and C within a few-months period would be confused and misled as to the name of the creditor, the amount of the debt, and the character and legal status of the account.

*May 19, 2017 Letter from MCM*

10

56.     On or about May 19, 2017, MCM mailed a debt collection letter to Holmes regarding an alleged debt, allegedly owed to "Midland Funding and serviced by MCM, with original creditor Synchrony.  A copy of this letter is attached to this Complaint as <u>Exhibit D</u>.

57.     Upon information and belief, <u>Exhibit D</u> is a form letter, generated by computer, and with information specific to Holmes inserted by computer.

58.     Upon information and belief, <u>Exhibit D</u> is a form debt collection letter, used by MCM to attempt to collect alleged debts.

59.     Upon information and belief, <u>Exhibit D</u> was the first written communication Holmes received from MCM regarding this alleged debt.

60.     Upon information and belief, <u>Exhibit D</u> was attempting to collect the same alleged debt as referenced in <u>Exhibits A-C</u>.

61.     The reverse side of <u>Exhibit D</u> contains the statutory validation notice that 15 U.S.C. § 1692g(a) requires debt collectors send within five days of the initial communication:

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.  If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

<u>Exhibit D</u>.

62.     The face of <u>Exhibit D</u> contains the following:

If we don't hear from you or receive payment by 07-03-2017, we may proceed with forwarding this account to an attorney.

<u>Exhibit D</u>.

63.     The face of <u>Exhibit D</u> also contains the following:

11

Reply By
07-03-2017

Call (800) 939-2353
Sun-Th: 5am-9pm PT;
Fri-Sat: 5am-4:30pm PT;

midlandcreditonline.com

Exhibit D.

64.     The face of Exhibit D also contains the following:

Call (800) 939-2353 by
     07-03-2017 to
     Discuss Options

Exhibit D.

65.     Exhibit D states that the debtor should "reply by 07-03-2017" and should "Call (800) 939-2353 by 07-03-2017 to Discuss Options."

66.     The instructions to "reply by 07-03-2017" and "Call (800) 939-2353 by 07-03-2017 to Discuss Options" mislead the unsophisticated consumer and contradict and overshadow the statutory debt validation notice.

67.     Exhibit D does not clearly and unambiguously inform the unsophisticated consumer that, in order to invoke her right to require MCM to cease most collection activities until they provide verification of the debt, or the name and address of the original creditor, the consumer must make the request in writing.   15 U.S.C. §§ 1692g(a)(4) & 1692g(a)(5); *see Vaughn v. CSC Credit Servs.*, 1994 U.S. Dist. LEXIS 2172, at *24 (N.D. Ill. Feb. 28, 1994).

68.     Disputing the debt is one "option" that a consumer has in any case.  *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").  The dispute option is particularly important with respect to a debt associated with an account like Plaintiff's, where

12

different creditors and debt collectors have provided conflicting information as to the name of the current creditor, the date of sale, and the account balance.

69. Moreover, Exhibit D instructs the debtor to "Reply By 07-03-2017." Even assuming the debtor responded in writing, if she did not send a written dispute until MCM's "reply by" date, she would not trigger her verification rights under the FDCPA. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997).

70. Exhibit D contains the following:

| Account Details | |
|---|---|
| Original Creditor | Synchrony Bank |
| Original Account Number | ████1829 |
| Current Servicer | Midland Credit Management, Inc. |
| MCM Account Number | ████3577 |
| Current Owner | Midland Funding LLC |
| Current Balance | $1,993.98 |

Exhibit D.

71. Exhibit D also contains the following:

Dear Rachel,

Welcome! On 01-27-2017, your Synchrony Bank/Walmart account was sold to Midland Funding LLC, which is now the sole owner of this debt. Midland Credit Management, Inc. ("MCM"), a debt collection company, will be collecting on, and servicing your account, on behalf of Midland Funding LLC.

Exhibit D.

72. Exhibit D also contains the following:

| Calls to and/or from this company may be monitored or recorded. | | | |
|---|---|---|---|
| Basic Information | | | |
| Original Creditor | Synchrony Bank | Current Creditor | Midland Funding LLC |
| Original Account Number | ████1829 | Current Servicer | Midland Credit Management, Inc. |
| Charge-Off Date | 12-18-2016 | MCM Account Number | ████3577 |

Exhibit D.

73. Exhibit D states that MCM is servicing the account on behalf of Midland Funding, which purchased the account from Synchrony on January 27, 2017.

13

74.     Exhibit D states that the MCM Account Number ends in 8577.  This number was not stated on Exhibit C, the debt collection letter sent by Atlantic, purportedly on behalf of Midland Funding.

75.     Exhibit D also states that the account charged off on December 18, 2016 and that the balance of the account is $1,993.98.

76.     Exhibit A, mailed on December 20, 2016 states that the balance of the account was $1,993.00 but Exhibit D, which states that the account charged off prior to Allied's mailing of Exhibit A, states that the balance of the account is $1,993.98.

77.     Exhibit B states that the account was sold to MCM on January 19, 2017 but Exhibit D states that the account was sold to Midland Funding on January 27, 2017.

78.     Exhibit C states that the account was sold to Midland Funding but also implies in several places that the account was sold to Atlantic or may not even have been sold at all.

79.     Exhibits A-D together are confusing as to the amount of the debt and the identity of the creditor.

### *August 9, 2017 Letter*

80.     On or about June 9, 2017, MCM mailed a debt collection letter to Holmes regarding the same alleged debt, allegedly owed to "Midland Funding and serviced by MCM, with original creditor Synchrony.  A copy of this letter is attached to this Complaint as Exhibit E.

81.     Upon information and belief, Exhibit E is a form letter, generated by computer, and with information specific to Holmes inserted by computer.

82.     Upon information and belief, Exhibit E is a form debt collection letter, used by MCM to attempt to collect alleged debts.

83.     Exhibit E contains the following:

14

Call (800) 939-2353 by
07-03-2017 to
Discuss Options

Exhibit E.

84.    Exhibit E also contains the following:

Midland Credit Management, Inc. has made several attempts to contact you regarding this account.
This letter is to inform you that we are considering forwarding this account to an attorney in your
state for possible litigation. Upon receipt of this notice, please call (800) 939-2353 to discuss your
options.

If we don't hear from you or receive payment by 07-03-2017, we may proceed with forwarding this
account to an attorney.

Exhibit E.

85.    Exhibit E also contains the following:

Reply By
07-03-2017

Call (800) 939-2353
Sun-Th: 5am-9pm PT;
Fri-Sat: 5am-4:30pm PT;

midlandcreditonline.com

Exhibit E.

86.    Exhibit E also contains the following:

You may request the following information by writing us at 2365 Northside Drive Suite 300, San Diego, CA 92108 and the same will be provided to you
at no cost within 30 days of receipt of your written request: 1) An account statement or complete transactional history, as applicable, reflecting your
name, the last four digits of the account number at the time of charge-off, and the charge-off balance and/or claimed balance, excluding any post
charge off payments; 2) A listing of all prior owners of this account and transfer information; 3) Documentation evidencing the transfer of ownership of
the account to Midland Funding; 4) An account statement or complete transactional history reflecting purchase, payment or other actual use of the
account or a signed document reflecting the opening of the account at issue; 5) an explanation of how any amount we are seeking to collect in excess
of charge-off was calculated; and 6) if applicable, the terms and conditions applicable to the account.

Exhibit E.

87.    Exhibit E also contains the following:

15

**Important Contact Information**

For disputes call (800) 939-2353 or write to:
Attn: Consumer Support Services
2365 Northside Drive
Suite 300
San Diego, CA 92108

Exhibit E.

88.     Exhibit E was mailed about 20 days after Exhibit D.

89.     Exhibit E instructs the consumer to "reply by 07-03-2017," after the 30-day validation period would have expired and notes that, if the consumer does not do so, the account will be forwarded to an attorney.

90.     Exhibit E instructs the consumer to call "to discuss options" in several places.

91.     Exhibit E does not reference the debtor's statutory validation rights under the FDCPA.

92.     While the face of Exhibit E does contain a statement offering that the consumer "may request [certain account information] by writing us . . . and the same will be provided to you at no cost within 30 days of receipt," the reverse side of Exhibit E expressly instructs consumers to call rather than write, stating: "For disputes, call (800) 939-2353."

93.     During the validation period, instructing the consumer that they may call in a dispute rather than communicating their dispute in writing contradicts and overshadows the validation notice, particularly when the debt collection letter does not even include the validation notice. *See Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *18-19 (N.D. Ill. Aug. 30, 2013) ("the absence of a reprinted validation notice or reference to the debtor's right to request validation, *combined* with the specific text of a second letter, can

16

create impermissible overshadowing or contradiction.") (citing *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 417 (7th Cir. 2005)).

94. The false statement that the consumer can call with a dispute rather than submit a dispute in writing, or that both methods of communication are equivalent, misleads the consumer into not successfully exercising her validation rights under 15 U.S.C. § 1692g(b), which includes a temporary cessation of collection activities until verification is provided.

95. Upon information and belief, MCM and Midland Funding have access to the information provided in Exhibits D-E and to copies of Exhibits D-E.

96. In light of Exhibits A-C, the unsophisticated consumer, upon receiving Exhibits D and E, would be deceived, misled, and confused as to the character, balance, and creditor associated with the account.

97. Moreover, in light of Exhibits A-C, the unsophisticated consumer, upon receiving Exhibits D and E, would be so overwhelmed and confused, she would feel intimidated into paying the debt rather than attempting to dispute it. *E.g., Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.).

98. Holmes was deceived, misled, and confused by Exhibits A-E.

99. The unsophisticated consumer would be deceived, misled, and confused by Exhibits A-E.

100. Holmes had to spend time and money investigating Exhibits A-E.

101.     Holmes had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Holmes on the consequences of Exhibits A-E.

## THE FAIR DEBT COLLECTION PRACTICES ACT,
## 15 U.S.C. § 1692 ET SEQ.

102.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

103.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

104. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

105. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

106. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through

19

[s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

107.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

20

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

108. The FDCPA prohibits debt collectors from contacting third parties and disclosing the existence of a debt. 15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

109. 15 U.S.C. § 1692b allows a debt collector to communicate with third parties for the purpose of determining the consumer's location or employment. However, the debt collector must "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

110. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

111. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

112. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

113. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

114. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

115.    15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

116.    15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

117.    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

118.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

22

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

119.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

## <u>COUNT I – FDCPA</u>

120.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121.    Count I is brought against all Defendants.

122. Exhibits A-E contain false, deceptive, misleading, and confusing statements as to the date the original creditor sold Plaintiff's account, the name of the current creditor, the amount, and the character and legal status of the debt.

123. In light of the confusion engendered by Exhibits A-E, the unsophisticated consumer would be so confused as to the nature and status of the debt, that she would feel intimidated into paying the debt rather than resolving it through other means, such as disputing the debt, obtaining a favorable settlement, or discharging the debt in bankruptcy.

124. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692g(a)(1), 1692g(a)(2), and 1692g(b).

## COUNT II -- FDCPA

125. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

126. Count II is brought against Defendants MCM and Midland Funding.

127. Exhibits D and E falsely state and imply that communicating a dispute by telephone is equivalent to communicating a dispute in writing.

128. 15 U.S.C. § 1692g(a)(4) states that disputes must be communicated "in writing" in order to invoke the protections of 15 U.S.C. § 1692g(b), including a temporary cessation of collection activities until verification of the debt is provided.

129. Exhibits D and E also request that the consumer "Reply By 07-03-2017," a date that is past the end of the 30-day validation period.

130. Defendants violated 15 U.S.C. §§ 1692e(10) and 1692g.

## CLASS ALLEGATIONS

131. Plaintiff brings this action on behalf of two proposed classes.

24

132.     Class I (the "Account Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form(s) represented by Exhibits A, B, C, D, and/or E to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between December 15, 2016 and December 15, 2017, inclusive (e) that was not returned by the postal service.

133.     Class II (the "In Writing" class) consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form(s) represented by Exhibits D or E to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between December 15, 2016 and December 15, 2017, inclusive (e) that was not returned by the postal service.

134.     The classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

135.     There are questions of law and fact common to the members of each of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-E violate the FDCPA.

136.     Plaintiff's claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

137.     Plaintiff will fairly and adequately represent the interests of the respective class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

138.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

139.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  December 15, 2017

                                          ADEMI & O'REILLY, LLP

                               By:    /s/ Mark A. Eldridge
                                      John D. Blythin (SBN 1046105)
                                      Mark A. Eldridge (SBN 1089944)
                                      Jesse Fruchter (SBN 1097673)
                                      Ben J. Slatky (SBN 1106892)
                                      3620 East Layton Avenue
                                      Cudahy, WI 53110
                                      (414) 482-8000
                                      (414) 482-8001 (fax)
                                      jblythin@ademilaw.com
                                      meldridge@ademilaw.com
                                      jfruchter@ademilaw.com
                                      bslatky@ademilaw.com

26